THE STATE v. KAVANAUGH, *Appellant.*

In Banc, March 17, 1896.

1. **Criminal Law**: DEFILEMENT OF FEMALE: EVIDENCE. Evidence that an orphan girl fifteen years of age was taken to the house of one of her brothers-in-law by another brother-in-law with whom she had been living, to remain during the temporary illness of the latter's wife, is sufficient to show such a confiding of her to the care and protection of the former, within the meaning of Revised Statutes, 1889, section 3487, as to warrant his conviction for defiling her while so at his house.

2. ———: ———: ———. Evidence that one charged with defiling his infant sister-in-law, subsequent to the time of the alleged offense, committed an abortion upon her is admissible as tending to prove his guilt of the crime charged, notwithstanding it tended to prove him guilty of another offense.

3. ————: PRACTICE: TRIAL AT SPECIAL TERM: NOTICE TO DEFENDANT. Failure to notify a defendant in a criminal cause of the calling of a special term at which he was tried, as required by statute, is no cause for reversal, where he made no objection to proceeding with the trial; the statute is merely directory and failure to comply with it could, at most, only have been cause for continuance.

*Appeal from Harrison Circuit Court.*—HON. PARIS C. STEPP, Judge.

AFFIRMED.

*Sallee & Goodman* for appellant.

(1) There is no evidence to sustain the verdict. The prosecutrix was never in the care, custody, or employment of defendant. *State v. Sibley*, 132 Mo. 104, dissenting opinion of Judge SHERWOOD; *State v. Arnold*, 55 Mo. 89. Criminal statutes should receive a strict interpretation as against the state. 1 Blackstone's Com., side pp. 87, 88; *U. S. v. Wilterberger,* 5 Wheat. 76; 1 Bish. Crim. Law, sec. 256. (2) On the trial the state was permitted to prove, against the objections of defendant, who at the time duly excepted, that he had procured and administered to her drugs, with the intention of producing miscarriage. In this there was manifest error. *State v. Reavis*, 71 Mo. 419; *State v. Turner*, 76 Mo. 350; *State v. Greenwade*, 72 Mo. 298; *State v. Goetz*, 34 Mo. 85; *State v. Daubert*, 42 Mo. 242; *State v. Furline*, 19 Mo. 380. Evidence of this kind is sometimes received where it is material to show a guilty knowledge on the part of defendant, or where the two acts are so closely connected that to separate them by the evidence is impossible. *State v. Greenwade*, 72 Mo. 298; *State v. Emery,* 76 Mo. 348. But the testimony of the witnesses shows that the supposed procurement of medicines or drugs took place long subsequent to the

alleged defilement. (3) The first, second, and third instructions given for the state are erroneous. The second assumed that there was a confidential relation existing between prosecutrix and defendant. It is error for the court to assume that any fact has been proved. *State v. Dellehunty*, 18 Mo. 331. The third instruction given for the state is clearly erroneous, in that it is a direct comment on the evidence, assuming as it does that the defendant's guilt has been established. It says: "If the jury believe from the evidence that the defendant, after the commission of the crime alleged in the indictment, fled," etc. It would be difficult to conceive of a more flagrant comment on the evidence than is embodied in this instruction. *State v. Wheeler*, 79 Mo. 366; *State v. Dellehunty*, 18 Mo. 331. (4) The instructions asked by defendant and refused by the court should have been given. (5) No notice of the special term of court at which defendant was tried was served upon defendant as required by section 3252, Revised Statutes, 1889. It will be conceded that courts have two kinds of extraordinary jurisdiction, that is, as to time and subject-matter, and that in such case all the facts which confer jurisdiction must appear on the record. The ordinary presumption in favor of regularity does not obtain in the case of a court of general jurisdiction exercising a special power. *Werz v. Werz*, 11 Mo. App. 26; *State v. St. Louis*, 1 Mo. App. 503; *Ells v. Railroad*, 51 Mo. 200; *Lind v. Clemens*, 44 Mo. 54; *Leslie v. St. Louis*, 47 Mo. 474.

*R. F. Walker*, attorney general, and *Morton Jourdan*, assistant attorney general, for the state.

(1) The evidence is ample to sustain the verdict. The girl was of tender years; was the sister-in-law of

appellant; was at his house attending to the household duties while appellant's wife was absent, nursing another sister. This is as much a "confiding to his care" as the law contemplates, even though appellant was not paying her wages as a domestic servant. R. S. 1889, sec. 3487; *State v. Terry*, 106 Mo. 209. The case of *State v. Arnold*, 55 Mo. 90, is not an authority in this case. Since the delivery of the opinion in the *Arnold* case the statute has been amended and *State v. Young*, 99 Mo. 284, has been rendered which virtually overrules the *Arnold* case. (2) Admission of testimony that appellant administered medicines to the child to produce an abortion, was proper to show that he was the cause of her shame. *State v. Young*, 99 Mo. 284. Evidence of another offense is not incompetent if it tends to prove the appellant guilty of the crime charged. *State v. Myers*, 82 Mo. 558; *Weed v. People*, 55 N. Y. 628; *People v. Sessions*, 26 N. W. Rep. 281, 295; *Hope v. People*, 38 Am. Rep. (N. Y.) 460. In *State v. Sibley*, 131 Mo. 519, evidence was introduced that the defendant gave the girl defiled medicine to produce an abortion. While the judgment was reversed, it was not on account of the admission of this testimony, it being clearly indicated by the court that such testimony was admissible. Most certainly, if evidence that a defendant gave the girl defiled money to induce her to leave the country, as in Fred Young's case, *supra*, is admissible, evidence of an abortion produced by her betrayer should not be excluded. (3) The instructions which are printed in full by counsel for appellant were authorized under the evidence, and fairly state the law of the case. They are not subject to substantial objection, and are sufficient to authorize the affirmance of the judgment herein. (4) Appellant complains that he was not formally notified of the holding of the special term, as

required by section 3252, Revised Statutes, 1889. A reasonable construction of this section is that the requirement as to notice is directory; and if not directory, and appellant was not ready for trial, application should have been made for a continuance, and facts stated sufficient to authorize the trial court in continuing the case. It is too late to make objections to a lack of notice for the first time in motions for a new trial, or in arrest; objections of this nature should be made and insisted on at the time.

DIVISION TWO.

GANTT, P. J.—The defendant was indicted in the Harrison circuit court at the May term, 1893, for defiling his sister-in-law, a young girl fifteen years old, and was convicted at a special term of said court in July, 1894, from which he appeals.

The facts are few. The girl's father and mother were dead and her estate was so meager that her guardian obtained homes for her where she could earn her living by doing part of the household work. When she was not thus employed she made her home with her two brothers-in-law, Wm. McGowan and the defendant Kavanaugh. Her guardian, Mr. H. B. Alden, testified that defendant told him the girls, meaning the prosecutrix and another younger sister, were both welcome to come and see his, defendant's, wife whenever they wanted to and that he understood the prosecutrix was making her home with defendant when not employed. Mr. McGowan and his wife testified that the two girls were staying with them until the fourteenth of December, 1892. On that day Mrs. McGowan was confined and Mr. McGowan took the two girls to the defendant's house to stay during her confinement and got the defendant's wife to go home with him to attend

his wife. During the night of December 14 the defendant took the prosecutrix from her bed and carried her to his own and had carnal connection with her. Subsequently he had intercourse with her at intervals during the ensuing four or five months, when she was visiting in his house. She became pregnant and he administered medicines to her and used a catheter to produce an abortion. She helped do the house work while she was at defendant's house.

I. Various errors are assigned, but they are all subordinate to the question whether the foregoing facts constitute such a confiding of the girl to defendant's care and protection as to bring the case within the letter and spirit of section 3487, which provides that "if any guardian of any female under the age of eighteen years, or any other person to whose care or protection any such female shall have been confided, shall defile her, by carnally knowing her, while she remains in his care, custody, or employment," he shall be guilty of a felony.

This section has been before this court for construction quite often. The section is nearly coeval with the state.

In the Revised Statutes of 1835, section 9, article 8, page 207, the act concerning crimes and punishments, it appears in these words: "If any guardian of any white female under the age of eighteen years, or of any other person, to whose care or protection any such female shall have been confided, shall defile her by carnally knowing her, he shall * * * be punished," etc.

That section was construed by this court in *State v. Acuff*, 6 Mo. 54, and *it was held that the statute included not only guardians but all other persons to whose care or protection any such female shall have been confided*, and the word "of" following the word "or" pre-

ceding the words "any other person" must be rejected to render the section intelligible, Judge Tompkins saying, "surely there can be no reason why it is not as criminal and as infamous in several other persons to violate such a trust, as it is for a guardian to do it."

The statute was afterward amended by striking out the word "white" and, as thus amended (1 Wag. Stat., p. 500, sec. 9), came before this court for construction again in *State v. Arnold*, 55 Mo. 90, and, without noticing or overruling *State v. Acuff*, it was held that where the married sister of a girl under eighteen years of age requested her father to let the girl go and help her husband plant corn for a day and the girl went and during the day the husband defiled her, it was not such a confiding of her to his care or protection as the statute contemplated; that the person to whom she was confided must either be her guardian or stand in some attitude in which a peculiar or confidential trust was reposed.

In *State v. Woolaver*, 77 Mo. 103, the section again came under review. In that case the evidence simply showed that the defendant was the stepfather of the prosecutrix Anne Murphy and that she lived with him, and during the time she made her home with his family he defiled her. There was no other evidence of confiding her to his care. This court affirmed a conviction in the case and assumed without discussion that the stepdaughter was confided to the care and protection of the defendant in that case under those circumstances.

In *State v. Young*, 99 Mo. 284, the prosecutrix was a girl of sixteen years. A sister of the defendant's wife employed her to go to defendant's house to do kitchen work. The father of the girl saw defendant several weeks after the girl went to work and told him she was not strong and not to work her too hard. To

which he answered she would be treated just like one of the family. It was said by this court that the relation thus assumed by the defendant *was akin* to that of a natural guardian, and the conviction was sustained. In that case this court cited with evident approval *State v. Jones*, 16 Kan. 608, which arose under a statute the same as ours prior to its amendment in the revision of 1879.

In *State v. Jones*, *supra*, the defendant took the female home with him ostensibly for his wife to see whether she would employ her as a servant. When he and the girl reached his house his wife was gone and the girl remained that night. He slept with her that night and defiled her and took her home the next day. The supreme court of Kansas said: "We think that the trust reposed in the defendant by the father and mother of the girl, in confiding her to his care for the purpose that he might take her to his own home so that his wife could employ her as a hired girl in his own family, was such a trust as is fairly contemplated by the statute. It was very much like placing the girl in the defendant's family * * * , and reposing the confidence for her care and protection in the defendant himself as the head of the family."

In *State v. Terry*, 106 Mo. 209, this division held that the employment of a female under eighteen years of age as a domestic servant in the family of defendant created such a confiding to his care or protection as to bring it within the statute, and that it was not necessary that the contract or confiding should be by the intervention of a third person, THOMAS, Judge, saying "the question is, not how the relation was formed, but did it exist in fact."

In *State v. Sibley*, 131 Mo. 519, the majority of this court concurred in holding that the relation of trust was created by a stepdaughter living in her stepfather's

family as a recognized member thereof without further proof of confiding her to his care or protection. To that ruling we still adhere.

The doctrine established by the great weight of authority is that while a stepfather is not bound to receive his stepchildren into his family and provide for them, yet if he does receive them and holds them out to the world as members of his family he stands *in loco parentis* and incurs the same liability with respect to them as he is under to his own children and this relation being established the reciprocal rights and duties attach. They are under his protection. *St. Ferdinand Academy v. Bobb*, 52 Mo. 357; *Smith v. Rogers*, 24 Kan. 140; s. c., 36 Am. Rep. 254.

And so it has been held by the court of last resort in our sister state of Texas that a *quasi parental relation* may be established by a minor sister living with her brother and in such a case the right of *correction as well as protection* flows from the assumed relation. *Snowden v. State*, 12 Tex. App. 105.

So this *quasi* relation may exist between the child and some person other than the stepfather or near relative and with similar legal consequences reciprocally. Schouler's Domestic Relations [5 Ed.], sec. 273.

With these principles in view, we hold that the prosecutrix, under the facts of this case, was confided to the care and protection of her brother-in-law, the defendant; that it was not essential to show a specific verbal confiding of her to his care or protection by express agreement with her guardian. While the statute requires that she should have been confided to his care or protection, it nowhere indicates that the confiding shall be evidenced by an express arrangement. We think when she was taken to his house by her brother-in-law to stay during her sister's confinement and was received by him into his home by the tacit and clearly

implied assent of her lawful guardian and left in his.
charge as the head of his family she was confided to
his care within the contemplation both of the letter and
spirit of the statute.   This trust was evidenced just as
the great mass of human transactions are, to wit, by the
acts of the parties.   In all such cases the parties are
presumed to have made those stipulations which as
honest, fair, and just men they ought to have made.
From the conduct, situation, and relation of the parties
we think there was sufficient evidence to authorize the
jury to find the girl was confided to the care and pro-
tection of defendant.   The circumstances of her being
taken to his house, the relation she bore to him, her
tender age, are susceptible of no other reasonable inter-
pretation, than that while she remained under his roof
she was confided by her sister and brother-in-law Mc-
Gowan to his care and protection.   It was her duty to
conform to the regulations of his family and his plain
duty to afford her protection.   If necessary we would
say he bore a peculiar relation of trust toward her.

We are not unmindful that men are not to be made
subject to criminal laws by implication and that only
those transactions are covered by criminal statute which
fall within both their spirit and letter but we are disposed
to so construe this statute as to promote the purpose
and object of the legislature by ascribing that meaning
to its words which, in our opinion, best harmonizes
with the context, and we do not violate the rule of strict
construction by giving to the words of the statute their
full meaning and thus effectuate what we believe was
the intention of the legislature in adopting them.   *U.
S. v. Hartwell*, 6 Wall. 385.

II.   There was no error in permitting the prose-
cutrix to testify that defendant gave her medicines and
used a catheter to produce an abortion.   It was evi-
dence tending directly to show he was the cause of the

mischief and it was not inadmissible because it tended to prove him guilty of another offense. *State v. Sibley*, 131 Mo. 519; *State v. Greenwade*, 72 Mo. 298; *State v. Young*, 99 Mo. 284.

III.   The contention that the court was without jurisdiction because defendant was not notified as required by statute of the calling of a special term, is not tenable.   A failure to notify defendant might have afforded him good ground for a continuance, but there is nothing in the statute that makes the jurisdiction of the court dependent upon that notice or attaches any such consequence to a failure to give it.   At most it is directory.   No objection was made to proceeding with the trial, no effort made to obtain the ten days' time and no exception saved and no possible injury has been suggested as resulting from the failure to give the notice.   The statute is as beneficial to defendant as the state.   It insures him that speedy public trial guaranteed by the constitution.

IV.   There was no error in the instructions. They were based upon the evidence and did not assume any controverted fact in the case.   The judgment is affirmed.   BURGESS, J., concurs.   SHERWOOD, J., does not concur.

IN BANC.

PER CURIAM.—The foregoing opinion handed down in division number two is adopted as the opinion of the court *in banc*, BRACE, C. J., BARCLAY, MACFARLANE, BURGESS, and ROBINSON, JJ., concurring with GANTT, J., therein.   SHERWOOD, J., dissenting.   The judgment of the circuit court is, therefore, affirmed.