THE STATE v. HILL, *Appellant.*

Division Two, June 16, 1896.

1. **Criminal Law**: EVIDENCE: CONDUCT OF ACCUSED. The manner of a person accused of crime, when not under restraint, as well as his silence in such case, may be shown as inculpatory circumstances whose weight should be determined by the jury.

2. ————: DEFILEMENT OF FEMALE. A female under eighteen years of age, who, by arrangement with defendant's wife, in which he acquiesced, became a member of his family, whom he controlled and who yielded him obedience, was confided to his "care and protection" within the meaning of Revised Statutes, 1889, section 3487, and he was rightly convicted under its provisions, for defiling her, upon proper proof. SHERWOOD, J., dissenting.

*Appeal from Morgan Circuit Court*—HON. D. W. SHACKLEFORD, Judge.

AFFIRMED.

THE defendant appeals to this court because of his conviction and sentence under the provisions of section 3487, Revised Statutes, 1889: "If any guardian of any female, under the age of eighteen years, or any other person to whose care or protection any such female shall have been confided, shall defile her, by carnally knowing her, while she remains in his care, custody, or employment, he shall, in cases not otherwise provided for, be punished by imprisonment in the penitentiary not exceeding five years, or by imprisonment in the county jail not exceeding one year and a fine not less than one hundred dollars."

The evidence tends to show that Emma Pierce, who was the sister of the brother-in-law of defendant's wife, went to defendant's house on a visit, and after remaining there for a week, she had a conversation with *Mrs. Hill*, the wife of defendant, when the latter told her that she liked her better than the girl she had, that is, a girl Mrs. Hill kept to work for her, for her board and clothes.

Emma Pierce, the prosecutrix, did not speak to defendant about remaining at defendant's house, but only to his wife, and his wife said: "If it was all right with him (her husband) it was all right with her." So it seems that defendant, though not spoken to by

prosecutrix, was, in some way, apprised of this arrangement, though there is no direct testimony on the subject. At any rate, prosecutrix's little brother, Bluford Pierce, was sent for and also prosecutrix's organ, and they were then domiciled at defendant's house, and he told a party that they were members of his family and had a right to attend school in the district. He also attempted to buy a carriage and told another party that his purpose in doing so, was that his family including these children could attend church together. In various ways defendant exercised control over the girl and her brother, and they obeyed him. He chose her associates and proscribed those of them whom he did not like.

Within a few weeks after her arrival at her new home, prosecutrix testified that defendant had sexual intercourse with her out at his barn, and frequently thereafter at his house in the same room where his wife was sleeping in another bed some six feet distant; the result of which was her pregnancy and the birth of an infant, of which defendant seemed quite fond and proud; carrying it in his arms and exhibiting it to visitors within an hour or two after its birth, and assisted very assiduously in taking care of it and its mother, and seemed to feel and so expressed himself as quite gratified at the thought that in consequence of the child's birth, all ground for the belief that he *"wouldn't breed,"* had been entirely removed.

Before the birth of the child, about a month, defendant, so prosecutrix testified, bought material for the child's clothing and concealed it down at the barn, and prosecutrix made it up.

Defendant denied that he had any intercourse with prosecutrix, or knew of her pregnancy; but does not deny that he bought materials for its clothing, nor that he concealed it at the barn. Nor does he deny

that he went with prosecutrix to Kansas City, paid her way there, and while there bought clothes for herself and child, and gave her some money; nor does he deny that they, prosecutrix, child, and defendant stopped at his brother's at that place. He does deny, however, what prosecutrix testifies to, that while in Kansas City, he proposed to her that if she would swear the child was not his, that he would leave his wife and go off and marry her.

Defendant made statements to parties who were witnesses for the state, which seem strongly to imply his paternity of the child. To one witness he said, speaking on this point: "There isn't anyone knows any thing about it but *her* (referring to prosecutrix) and *me.*" To another witness for the state, Lee Pierce, he asked the question (as that witness testified) whether he had ever seen the child and whether it looked like him, and this witness replying that "it favored him," thereupon defendant asked witness who he thought the father of the child was, and witness told him, "I think it is yours." To this response defendant made no reply, but *"kinder laughed."*

These statements just referred to, were not denied by defendant when on the witness stand.

It also appears in evidence that defendant dictated two statements for prosecutrix to sign and she wrote them, in which she stated that defendant was not the father of her child, and she acknowledged to several witnesses that it was her own, the statement, and that she was not influenced by any one in making it. The above is the substance of the evidence.

The court of its own motion gave the following instruction:

"Gentlemen of the jury: You are instructed that if you shall find from the evidence that in the county of Moniteau, and state of Missouri, at any time within

three years before the ninth day of March, 1894, the defendant was a person to whose care and protection Emma Pierce was confided, and that she was a female under the age of eighteen years, and that in said county and state, within said three years before the ninth day of March, 1894, and while she was still in his care, custody, and employment, and while she was still under the age of eighteen years, the defendant did defile the said Emma Pierce by having sexual intercourse with her, then you should find the defendant guilty.

"If you find that the said Emma Pierce lived with the defendant and his wife as one of the defendant's family, performing domestic labor for her support, and that the defendant exercised care or custody over her as a member of his family, then she was in his care within the meaning of the indictment. It is not necessary that she should have been confided to him by any particular person or by any legal proceeding in order to constitute her within his care. It is sufficient for the purposes of this prosecution if he exercised care or custody over her.

"Before you can find the defendant guilty, every material allegation of the indictment must be proved beyond a reasonable doubt, that is to say:. that Emma Pierce was a female under the age of eighteen years; that she was in the care, custody, or employment of the defendant; that while she remained in his care, custody, or employment, and while she was still under the age of eighteen years, in the county of Moniteau, and state of Missouri, he defiled her by having sexual intercourse with her, and that such sexual intercourse was within three years next before the ninth day of March, 1894.

"The law presumes the defendant innocent until his guilt is proved, and this presumption follows him throughout the trial, and before he can be convicted

you must find him guilty beyond a reasonable doubt; but such doubt, to warrant an acquittal, must be a substantial doubt arising from a consideration of all the evidence in the case, and not a mere possibility of his innocence.

"You are the sole judges of the weight of the evidence and of the credibility of the witnesses; and, in this connection you are instructed that the defendant is a competent witness in his own behalf, but in determining what weight should be given his testimony you should consider that he is the party on trial and his interest in the result of the case.

"The jury are instructed that they are the sole judges of the weight of the evidence and the credibility of the witnesses, and in determining the credit that should be given to the testimony of any witness, they may consider the conduct and demeanor of such witness upon the stand, the probability or improbability of his or her statements, and the reasonableness or unreasonableness of the matters testified to by him or her, and will give to such testimony such weight as the jury may believe from all the facts and circumstances in evidence the same is entitled to receive.

"The court instructs the jury that in considering the weight of the evidence given by defendant's wife they may take into consideration the fact that she is defendant's wife, and you may consider her interest in this case and the marital relation, in passing on the credibility of her testimony.

"The court instructs the jury that if they believe any witness has willfully sworn falsely as to any material fact, they may disregard the whole or any part of such witnesses' testimony.

"The readiness or frequency with which Emma Pierce may have consented to have sexual intercourse

with the defendant would constitute no defense to this indictment.

"If you should find the defendant guilty you will assess his punishment at imprisonment in the penitentiary for a term not exceeding five years or less than two years, or by imprisonment in the county jail not more than one year, and by a fine of not less than one hundred dollars.

"The jury are instructed that the indictment in this case against the defendant is a mere formal charge against him and raises no presumption of his guilt, and the jury should not permit themselves to be influenced in any manner against defendant by reason of the finding of said indictment."

Exceptions were saved by defendant to the foregoing instruction.

Defendant, on his part asked, and the court refused to give, the following *instruction:*

"The jury are instructed that before they can find the defendant guilty they must believe from the evidence that the witness Emma Pierce was actually and affirmatively confided to the care and protection of defendant, and although the jury may believe from the evidence that the defendant had sexual intercourse with her and that she was under eighteen years of age, yet if she was simply employed by his wife to do domestic work about defendant's house and place, and was there under such an arrangement working for her board and clothes this was not such a confiding of her to defendant's care or protection as would authorize his conviction of the offense charged in the indictment, and they must find him not guilty.

"The jury are instructed that unless they believe from the evidence, beyond a reasonable doubt, as defined in these instructions, that Emma Pierce was under the age of eighteen years, and that she was confided

to the care or protection of defendant, and that defendant did defile her by having sexual intercourse with her while she remained in his care, custody, or employment, they must find him not guilty.

"The jury are instructed that it devolves upon the state to prove defendant's guilt to the satisfaction of the jury beyond a reasonable doubt before he can be convicted; and unless this has been done the jury must find him not guilty. A reasonable doubt as used in this instruction means a substantial doubt of defendant's guilt, and not a mere possibility of his innocence."

To which refusal, defendant excepted. The jury brought in a verdict of guilty with imprisonment for two years, etc.

*L. F. Wood* and *W. M. Williams* for appellant.

(1) The admission of the testimony of Lee Pierce was manifest error. He should not have been permitted to give his opinion of defendant's guilt. It was error to allow him to testify that defendant asked him whom the child favored, and that witness answered that it favored defendant; that witness was then asked by defendant whom he thought was the father of the child and witness told defendant he thought it was his and defendant "kinder" laughed and never said yes or no. *State v. Glahn,* 97 Mo. 679; *State v. Murray,* 126 Mo. 611; *Hoffman v. Hoffman's Ex'rs,* 126 Mo. 486; *Bank v. Nichols,* 43 Mo. App. 385; 1 Greenl. on Ev., sec. 197. For the error in admitting this evidence, the judgment should be reversed and defendant awarded a new trial. *State v. Taylor,* 118 Mo. 153. (2) The court in its instructions as to the facts to be found by the jury beyond a reasonable doubt, being the third paragraph of the court's charge, omitted to require the jury to find that the defendant was a "person to whose

care or protection such female was confided." R. S. 1889, sec. 3487.

*R. F. Walker*, attorney general, *Morton Jourdan*, assistant attorney general, and *Jos. W. Hunter*, prosecuting attorney, for the state.

(1) The testimony of the witness, Lee Pierce, as to all of his conversation with defendant, is clearly competent, even under the most rigid construction of the authorities cited in defendant's brief. What defendant said, as well as his demeanor and silence, are undoubtedly proper for the consideration of the jury. 1 Greenl. on Ev., secs. 197, 215; Rice, Crim. Ev., sec. 318; Whar. Crim. Ev., sec. 679; Burrill, Circumstantial Ev., secs. 482, 483; Bishop, New Crim. Proc., sec. 1254; *Pierce v. Goldberry*, 35 Md. 317; *Puett v. Beard*, 86 Ind. 104. Even if the testimony of Lee Pierce objected to had been improperly admitted, it would not be ground for reversal. *State v. Murray*, 126 Mo. 611; *Puett v. Beard*, 86 Ind. 104. (2) The instructions given by the court of its own motion follow the approved precedents, and fully and fairly present the issues to the jury. The third paragraph complained of by defendant clearly presents the issues and defines the elements of the crime defined in the statute. To have repeated in the third paragraph the technical language of the statute, "a person to whose care and protection such female was confided," etc., would have had a tendency to confuse the jury. *State v. Young*, 99 Mo. 284; *State v. Strattman*, 100 Mo. 540; *State v. Terry*, 106 Mo. 209; *State v. Kavanaugh*, 133 Mo. 452; *State v. Sibley*, 33 S. W. Rep. 167.

SHERWOOD, J.—1. Taking all the testimony of Lee Pierce together, I am unable to discover any serious objection to it, certainly not any reversible error in

its admission. Defendant was not under arrest or laboring under restraint. He introduced the conversation himself, and seemed eager to have his fondest wishes confirmed, that he was indeed father of the child. Laboring under no restraint, he was at perfect liberty to have denied that he was the child's father. Instead, however, of denying the charge that he evidently had sought should be made, he interposed no denial, but only *"kinder laughed."*

The manner, the demeanor of a party when accused of crime, as well as his silence in such circumstances, when if not guilty, truth born of indignant innocence would naturally impel him to speak, are always fit subjects to be brought before the jury as inculpatory circumstances, of whose probative force the triers of the fact must judge. Rice's Crim. Ev., sec. 318; 1 Bishop, New Crim. Proc., sec. 1254; Whart., Crim. Evid. [9 Ed.], sec. 679; 1 Greenl., Evid. [14 Ed.], secs. 197, 215; Burrill, Circ. Evid. [3 Ed.], 482, 483; *Pierce v. Goldsberry*, 35 Ind. 317; *Puett v. Beard*, 86 Ind. 104.

2. The evidence abundantly establishes, and in a variety of ways as heretofore seen, the fact that defendant was the father of the child. It is true he denies that its paternity should be cast upon him, but of this to the jury belonged the exclusive determination.

Now if the paternity of the child be established as that of defendant, his guilt becomes obvious, and a simple corollary of such paternity, provided the prosecutrix were confided to his care as contemplated by the statute. In order for the jury correctly to determine this fact, the manner in which it was instructed becomes all important. So that, in order to solve the question whether defendant was rightly convicted, depends on the correctness of the action of that court in giving and refusing an instruction.

The correctness of the action of the trial court in this regard is, however, settled by the rulings of this court in the cases of *State v. Sibley*, 131 Mo. 519; *State v. Kavanaugh*, 133 Mo. 452.

Therefore judgment affirmed, in which affirmance, so far as concerns the last paragraph of the opinion, I do not concur. GANTT, P. J., and BURGESS, J., concur.